**Josephine M. MILLER, Personal Representative of the Estate of Thomas Miller, Lewis Keith Pyle, and Todd Bouslog, Plaintiffs–Appellants,**

v.

**HONEYWELL INTERNATIONAL, INC. and Aeroquip–Vickers, Inc., Defendants–Appellees.**

Nos. 02–4250, 02–4266.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 2003.

Decided July 21, 2004.

Rehearing and Rehearing En Banc Denied Aug. 16, 2004.

William E. Winingham, Harry A. Wilson, Jr., Wilson Kehoe & Winingham, Hugh G. Baker, Jr., Baker, Siegel & Page, Indianapolis, IN, for Plaintiffs–Appellants.

Steven E. Springer, Kightlinger & Gray, Michael C. Cook, Dale W. Eikenberry, Wooden & McLaughlin, Indianapolis, IN, Christian Moller, Perkins Coie, Seattle, WA, for Defendants–Appellees.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

## ORDER

On March 1, 1997, an Indiana National Guard helicopter crashed at Camp Atterbury. The pilot was killed, and three other Guardsmen were seriously injured. This unfortunate accident led to lawsuits by the estate of the deceased Guardsman and two of the survivors (all Indiana citizens) against the companies that designed various parts of the aircraft, including Honeywell International, Inc. (a Delaware corporation with its principal place of business in New Jersey), and Aeroquip–Vickers, Inc. (an Ohio corporation with its principal place of business in the same state), focusing on actions taken by Aeroquip–Vickers's Tedeco Division. The district court granted summary judgment in favor of both Honeywell, *Miller v. Honeywell Int'l, Inc.*, 2002 WL 31399793 (S.D.Ind. October 15, 2002), and Aeroquip–Vickers, *Miller v. Honeywell Int'l, Inc.*, 2002 WL 31399125 (S.D.Ind. September 30, 2002). The district court then certified the orders disposing of the case with respect to those two parties for immediate appeal under Fed.R.Civ.P. 54(b). Upon our *de novo* review, we are satisfied that the district court properly analyzed the issues raised in this appeal and ruled in favor of these two defendants.

## I

The helicopter carrying pilot Thomas Miller and Guardsmen Todd Bouslog, Lewis Pyle, and Don Brinker (not a party to this lawsuit), crashed after a planetary gear located in the engine's reduction gear assembly cracked at its root and failed, resulting in a complete loss of torque that sent the aircraft spiraling to the ground. Although the helicopter was equipped with an advanced oil debris detection system (ODDS) designed to detect abnormal engine wear and to warn the pilot of potential engine problems, such as a gear failure, and with a warning light that was supposed to activate when metallic particles of sufficient size were present in the engine oil, neither of those safety systems worked. The Guardsmen claim that the systems were defective insofar as they were incapable of detecting very small particles, which also led to the failure in the warning light mechanism.

Honeywell both designed the planetary gears and manufactured the carrier assembly. Aeroquip–Vickers's Tedeco Division, to which we refer in the remainder of this order simply as "Tedeco," provided the "zapper," which was the part of the ODDS that would destroy the small metallic particles and activate the warning light if a threshold amount of debris was detected. The United States Army had asked Tedeco to modify the zapper so that it would burn particles only above a certain size. The Army was concerned about the problem of false positives: if the warning light was activated too frequently (a distinct possibility if the zapper was continuously burning off small particles that were an ordinary part of wear), helicopter personnel would not be able to tell the difference between a routine occurrence and a serious problem. This particle-size adjustment, however, was in the Guardsmen's view the reason why the system did not detect the fatal

failure on March 1, 1997, and no light appeared to warn the crew of imminent danger.

## II

With this theory in mind, the Guardsmen brought several products liability claims against Honeywell, Tedeco, and Precision Gear, Inc., (a corporation organized in New York with its principal place of business there). As noted, although that part of the case remains before the district court, apparently stayed pending this appeal, the district court properly certified the judgments in favor of Honeywell and Tedeco for immediate appeal. The Guardsmen allege that Honeywell breached its duty to warn the Army that the carrier assembly had alignment problems that could cause premature wear of the planetary gears. They also claim that Honeywell defectively designed the planetary gears and prescribed inadequate methods of heat treatment. Last, they asserted that Honeywell breached its duty to warn the Army that the prescribed heat treatments were ineffective. The claims brought against Tedeco allege that Tedeco defectively designed the zapper through the modifications that caused the warning system to fail to alert the pilots of the impending engine failure.

### A

Applying Indiana law to the case (which seems to be uncontested), the district court found that any products liability claims against Honeywell related to the carrier assembly were barred by the provision of Indiana's Products Liability Statute that imposes a ten-year limit on any cause of action arising from the manufacture or sale of a defective product. Ind.Code § 34–20–3–1 (2002). Honeywell manufactured the assemblies in 1977, fully 20 years before the accident. Although the Guards-

men had not explicitly raised alternative arguments, the district court also considered the possibility that the Guardsmen were attempting to state a negligent undertaking claim pursuant to Restatement (Second) Torts § 324A, which Indiana's courts follow. To state such a claim, the Guardsmen would have to show that:

(a) Honeywell's failure to exercise reasonable care increased the risk of harm to the Guardsmen, or

(b) Honeywell undertook to perform a duty owed by the Army to the Guardsmen, or

(c) the harm was suffered because of reliance of the Army or the Guardsmen upon the undertaking.

As the district court found, the Guardsmen failed to make a *prima facie* showing of the services Honeywell undertook for purposes of subparts (b) and (c), or the services it may have performed negligently for purposes of subpart (a).

■ As for the claims related to the planetary gears themselves, the Guardsmen even now have not been able to point to any evidence in the record demonstrating that Honeywell prescribed inadequate heat treatments in 1989, the year the specifications at issue were created. The Guardsmen urge us to use evidence from 1991, the year in which the gears were sold to the Army, as the appropriate time to compare methods. But there is no reason why specifications created in 1989 should have complied with standards from two years hence, nor have the Guardsmen given us any reason to conclude that there was no material change between 1989 and 1991. The absence of evidence relating to 1989 is thus fatal to their claim.

The Guardsmen also contend that the fact that Honeywell itself changed testing methods demonstrates that Honeywell knew that its methods were inadequate. But such evidence, without more, shows only that Honeywell was continuing to update and improve its processes. To infer that Honeywell was negligent or that the earlier product was defectively designed or manufactured solely because of an up-date in testing methods would be perverse. It would discourage manufacturers from innovating or improving, for fear of potential liability under older specifications.

### B

■ We turn now to the Guardsmen's claim that Tedeco designed and sold a defective ODDS to the Army. Tedeco responded to that claim by asserting a "military contractor" defense, which required it to show that (1) the military approved reasonably precise specifications for the equipment; (2) the equipment conformed to those specifications; and (3) the contractor warned the military about any dangers known to the contractor but not to the United States. *Boyle v. United Technologies Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). The Guardsmen argue that Tedeco failed to meet the first and third parts of that test (or, at a minimum, that genuine issues of fact remain for trial). With respect to the first element, although the Army bought the zapper from Tedeco essentially "as is" to be part of its ODDS, Tedeco did make certain changes to the zapper at the Army's request. One of those changes involved increasing the gap so that larger metal wear particles could slip through without activating the warning light. But the evidence in the record shows that Tedeco and the Army worked closely together on the zapper. There is also ample evidence of a back-and-forth process between the Army and Tedeco with respect to the design of the system, including the decision to widen the gap and change the warning trigger. The latter decision is the modification that, according to the Guards-

men, played a pivotal role in the helicopter crash. But there is no way on this record that a trier of fact could conclude that this was Tedeco's unilateral act. The decision was made in close collaboration with the Army, and as such, it fits the first element of the "military contractor" defense.

Under the warning element, Tedeco had to show that it warned the Army about dangers known to Tedeco but not to the Army. The Guardsmen allege that Tedeco failed to warn the Army of the dangers of not having a pulse counter and of leaving an old magnetic detector in the ODDS with the new zapper. The record shows that the pulse counter was intended as a testing device, and, as designed, would not detect particles the size of those burned off in this particular crash. Tedeco did warn the Army (which had received the same message from its own investigators after an earlier helicopter crash), to remove the old magnetic detectors. Equipped with that knowledge, the Army chose to leave the old detectors in the system. There is no evidence that Tedeco had knowledge equal to or better than the Army's about the risks caused by tiny undetected particles in the system (or other defects relevant to these claims) that would have given rise to a duty to expand upon the warnings which it provided.

## III

For these reasons, as well as those considered in the district court's memoranda, the judgments of the district court in favor of Honeywell and Tedeco are AFFIRMED.